IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

United States of America

v.     Docket No. 7:22-CR-46-TTC-RSB

Kevin Butler

**Defendant's motion to rescind order of commitment and schedule a competency hearing**

This case presents the following question: how should the court proceed in the case of a defendant who appears incompetent to stand trial, but for whom the Attorney General cannot prepare a report on that issue within the time established by Congress? Mr. Butler proposes that the court should rescind the order of commitment and hold a hearing on the defendant's competency, as significant evidence already available demonstrates that Mr. Butler is not currently competent. Otherwise, Mr. Butler will be held longer than necessary for a competency determination, which will delay his ultimate restoration to competency or this court's decision that he is unlikely to be restored to competency, and the ultimate disposition of his case. The only reasonable action, for the court to give effect to time limits on competency commitment, is for the court to rule on competency even though that the court will not have the benefit of a psychological report—a scenario specifically permitted by the relevant law.

**Factual and procedural summary**

Kevin Butler has a lifelong history of saying outrageous things to get help. When he says outrageous things, he gets help. When he doesn't say outrageous things and asks for help, his symptoms are blamed on drug use. But his drug use, though complicating, is also a result of underlying mental illness. This is not to say that Mr. Butler's conduct is part of

an elaborate plan to obtain medical care; rather, one could view Mr. Butler's actions through that lens and make sense of them. This lens is merely an alternative to the government's proposed rationale, that Mr. Butler should be viewed as a dangerous person who actually threatened the life of the president when he made prosaic assertions (left on a voice mail for a local probation officer) that Mr. would shoot the president (with a gun he did not own, and for which the government has failed to produce any evidence he ever could have acquired) while Mr. Butler was committed to a state mental health institution. Those words, according to the government's rationale, were almost magical: upon their very utterance, a crime was committed.

Mr. Butler has previously made fantastical threats to harm others with weapons, though he tends to do so when unarmed or unable to acquire weapons. In 2012, while incarcerated, he sent letters that contained fantastical descriptions of how he would harm the president. After he sent those letters, he got some of the mental health treatment he desperately needed. In the last few months, he threatened to harm himself or others with a knife, but when arrested, police found no evidence that he ever had a knife. Then, when he was told he was going to a local jail from the mental institution, he called a state probation officer and left voice messages that contained prosaic assertions that Mr. Butler would kill the president. Secret Service Agents decided to charge Mr. Butler, even though he was involuntarily committed to a state hospital at the time he made the alleged threats, and even though he had pending warrants that would have kept him in custody. These charges led to the current indictment.

At Mr. Butler's initial appearance before the court on December 8, the Court stopped the proceedings because it did not seem that Mr. Buter was able to understand what was happening. The next day, the government asked, and Mr. Butler's counsel assented to the government's request, that Mr. Butler be evaluated for his competency to stand trial. The

Court ordered him committed to the custody of the Attorney General for thirty days to conduct that evaluation. Mr. Butler sat in a local jail for the next twenty or so days, and he was finally brought to a federal detention center ("FDC") on January 9. That facility then sent a letter requesting the court allow it until March 9 to complete the evaluation—87 days after the court ordered the evaluation, and 59 days after Mr. Butler was physically present at the FDC.

**Because the Attorney General cannot comply with the court's order, the court should rescind the order of commitment.**

Due process prevents the government from holding people for unreasonable amounts of time to determine their competence to stand trial. *See Jackson v. Indiana*, 406 U.S. 715 (1972). Congress has determined that thirty days is a reasonable time for a defendant to be committed to determine his competency, with the opportunity for that time to be extended fifteen days upon a showing of good cause. *See* 18 U.S.C. § 4247(b).

In this case, the government has indicated it cannot meet its obligation to return a report on Mr. Butler's competency within the time allotted. As such, the court should rescind the order of commitment. Holding Mr. Butler longer than reasonably necessary to determine his competence would violate his due process rights or the court's own order of commitment as authorized by statute.

**The court should schedule a hearing to determine Mr. Butler's competence to stand trial even without having the benefit of a report prepared pursuant to 4241(b).**

If the court grants the defense's request, it is then left to still determine whether Mr. Butler is competent without the aide of a report. While such a report is helpful, it is not necessary, as the determination of competence is a legal conclusion not a medical one. *See, e.g., United States v. Brennan*, 928 F.3d 210, 215 (2nd Cir. 2019) ("a defendant's competency

is a legal question that is properly reserved for the courts"). Moreover, the court is not required to review a psychological report to make its competency determination. *See* 18 U.S.C. § 4241(b) ("prior to the date of the hearing, the court *may* order that a psychiatric or psychological examination of the defendant be conducted . . .") (emphasis added).

As an initial matter, the Fourth Circuit has concluded that the defense bears the burden of proving incompetence to stand trial. *See United States v. Robinson*, 404 F.3d 850 (4th Cir. 2005). Other circuits disagree, and the Supreme Court recognized that the issue of the burden of proof only matters in a few "cases where the evidence is in equipoise," *see Medina v. California*, 505 U.S. 437, 449 (1992) (interpreting California state law). To the extent that the defense bears the burden (even though the government moved for Mr. Butler's evaluation), the defense is comfortable proceeding on the ample evidence already available that proves Mr. Butler is currently suffering from a "mental disease or defect" that renders him "unable to understand the nature and consequences of the proceedings against him" or to "assist properly in his defense." *See* 18 U.S.C. § 4241(d); *see also Dusky v. United States*, 362 U.S. 402 (1960).

To help the court, that evidence the defense will present at a hearing is summarized below:

- **Mr. Butler was recently involuntarily committed to a state mental health institution because he engaged in bizarre behaviors consistent with people suffering from a mental illness.** Mr. Butler was admitted to the Catawba State Hospital on November 18, 2022. Prior to his admission, he was hospitalized at the Northern Virginia Mental Health Institute from October 21, until November 15 2022. He has been diagnosed with unspecified schizophrenia spectrum disorder and having an unspecified psychotic disorder, among other physical and mental health

diagnoses, and has a poor history of using medication to treat his illnesses as prescribed.

- **Mr. Butler has experienced significant mental illness for most of his life.** Medical records show that Mr. Butler has been treated repeatedly for mental health issues on an inpatient basis throughout his life. He also demonstrated symptoms of mental illness in his early childhood, and juvenile records and his mother's own assertions to his prior counsel support these claims. For most of Mr. Butler's adult life, he seems to vacillate between jails, medical facilities, and living in shelters or in the care of others. This history demonstrates that Mr. Butler has resumed bizarre behaviors even after he has received treatment—indicating that his current condition is unlikely to have been treated effectively by his recent short stays in Virginia medical facilities.

- **Mr. Butler was found incompetent to stand trial in the Eastern District of Virginia in 2013.** Although a court's decision to find Mr. Butler incompetent in 2013 is certainly not determinative on the issue before this court, a prior history of incompetent findings shows that it is more likely that Mr. Butler is not currently competent given that his behaviors and though patters are similar.

- **Mr. Butler harbors delusional beliefs central to the issues in his case.** Mr. Butler is charged with threatening the president. When interviewed by the Secret Service, Mr. Butler repeatedly mentioned delusional beliefs that he was being followed by "gang stalkers." Mr. Butler had a similar set of beliefs in 2013 when he was interviewed for nearly identical threats—and he told the Secret Service then that his beliefs motivated his actions. In effect, he said that he threatened the president to "get the people to stop following me." While some delusional beliefs

might not affect a person's competence to stand trial, delusions central to a case necessarily prevent a defendant from having a "rational" and "factual understanding" of the charges against him. *See Dusky*, 362 U.S. at 402.

- **Mr. Butler's demeanor in court suggests that he cannot understand the proceedings against him or assist in his defense.** This court was unable to continue Mr. Butler's initial detention hearing because he did not appear to understand or be capable of understanding the proceeding.

- **Mr. Butler's counsel will proffer that he cannot discuss the factual allegations against Mr. Butler without contesting Mr. Butler's delusional beliefs, and that Mr. Butler is currently unable to assist in his defense.** Counsel will present evidence, through a proffer, that Mr. Butler cannot currently assist in his defense.

Congress has drawn the line at thirty days, and up to forty-five, for the government to obtain a psychological evaluation completed by a medical professional appointed by the Attorney General. Although the government has an interest in ensuring an accurate finding of competency, that interest does not extend to allow a defendant to be detained for an unreasonable time for the government to obtain evidence bearing on that issue when ample evidence can otherwise be presented.

## Conclusion

The government cannot prepare a report that meets the court's order of commitment or the timelines established by Congress to assist the court in determining Mr. Butler's competency to stand trial. However, the law does not require the court to review a report prior to deciding the issue, and ample evidence proves the defendant's incompetence. As

such, the court should rescind its order of commitment and schedule a hearing pursuant to

18 U.S.C. § 4247(d).

      Respectfully submitted,

/s/ Benjamin Schiffelbein
Assistant Federal Public Defender
Counsel for Mr. Butler
210 First Street, Ste 400
Roanoke, VA 24011
Benjamin_Schiffelbein@fd.org